The Rath Packing Company v. Commissioner.
Rath Packing Co. v. Commissioner
Docket No. 108171.
United States Tax Court
1943 Tax Ct. Memo LEXIS 154; 2 T.C.M. (CCH) 622; T.C.M. (RIA) 43384; August 10, 1943
*154 George E. Frazer, Esq., 3900 Board of Trade Bldg., Chicago, Ill., and B. F. Swisher, Esq., for the petitioner. John D. Kiley, Esq., and Harold H. Hart, Esq., for the respondent. TURNER Memorandum Findings of Fact and Opinion TURNER, Judge: The respondent determined deficiencies in the petitioner's income and excess profits taxes as follows: Excess
Fiscal Year
Income
Profits
Ended
Tax
Tax
October 31, 1934
$57,756.45
$3,390.47
October 31, 1935
22,049.02
5,063.41
The only issue presented is whether the respondent erred in disallowing $470,037.15 and $164,962.85 of the processing tax deductions taken for the fiscal year 1934 and 1935, respectively. Findings of Fact The petitioner is an Iowa corporation, engaged in the meat packing business, with its principal office in Waterloo. Its income and excess profits tax returns for the fiscal years ended October 31, 1934 and 1935, were filed on the accrual basis, with the Collector at Des Moines. In its income and excess profits tax returns for the fiscal years 1934 and 1935, the petitioner took deductions for processing taxes in the amounts of $3,576,413.69 and $3,774,230.65, respectively. So far as disclosed, the *155 former amount was paid in full. Of the latter amount only $1,322,831.84 was ever paid, the remainder not having been paid because of injunction proceedings contesting the validity of the processing tax. The petitioner filed, under Title III of the Revenue Act of 1936, returns of tax on unjust enrichment for the fiscal years ended October 31, 1935. and 1936. The return for the former year showed a tax of $33,968.84, which was paid by the petitioner, and the return for the latter year showed no liability for tax. About July 1, 1937, the petitioner filed, under Title VII of the Revenue Act of 1936, a claim for refund of $3,742,488 of processing tax paid during the period from November 5, 1933 through January 31, 1935. The petitioner also filed claim for refund of floor stock taxes in the amount of $85,026.57, imposed in November 1933. The respondent caused the petitioner's records to be examined in connection with the returns of tax on unjust enrichment and with the claim for refund of processing tax and floor stock tax. Prior to April 11, 1939, this examination was completed but the petitioner was not furnished with any copy of the report made, nor was it definitely advised as to *156 the results other than being orally advised that there would be a deficiency of between $1,000,000 and $2,000,000 in the tax on unjust enrichment. On April 11, 1939, representatives of the petitioner, while in Washington on other business, called informally at the Bureau of Internal Revenue in quest of definite information respecting the petitioner's liability for additional tax on unjust enrichment. Thereafter the petitioner arranged for a formal conference with the Bureau for the purpose of attempting to effect a determination and settlement of the refund claims and the question of additional tax on unjust enrichment. This conference was held in Washington on December 18, 1939. The petitioner was represented by its president and its counsel, while the Bureau was represented by four of its employees. The position taken by the Bureau at the beginning of the conference was that the petitioner's claims for refund of processing tax was allowable to the extent of only about $500,000, with interest of approximately $166,000; that additional tax on unjust enrichment with interest thereon was owing by petitioner in the amount of approximately $890,000. The position taken by petitioner was *157 that it was entitled to a net refund of $1,000,000. After a series of offers and counter offers by the respective sides, a settlement agreement was reached whereunder the petitioner would pay a net additional amount of $250,000 tax on unjust enrichment. At the end of the conference an instrument reading as follows was prepared for the signatures of the petitioner and the respondent: CLOSING AGREEMENT UNDER SECTION 506. REVENUE ACT OF 1936 (Titles III and VII - Revenue Act of 1936) THIS AGREEMENT, made in duplicate under and in pursuance of section 506 of the Revenue Act of 1936, by and between The Rath Packing Co., a taxpayer located at Waterloo, Iowa, and the Commissioner of Internal Revenue, WITNESSETH: WHEREAS, the Commissioner of Internal Revenue has determined that the taxpayer is liable for tax imposed under Title III of the Revenue Act of 1936, for taxable years ended prior to November 1, 1936; and WHEREAS, the taxpayer has filed a claim or claims for refund of amounts paid as tax under the Agricultural Adjustment Act, as amended; NOW, THEREFORE, it is agreed between the taxpayer and the Commissioner of Internal Revenue that the total liability of the taxpayer for *158 tax, penalty, and interest under the provisions of Title III of the Revenue Act of 1936, for the said taxable years, and the total amount with interest thereon, allowable to the taxpayer as refund of amounts paid as tax under the Agricultural Adjustment Act, as amended, shall be finally settled (except in case of fraud, malfeasance, or misrepresentation of a material fact) by the payment of $250,000.00) by the taxpayer. This agreement shall be without force or effect until property executed by all parties to this agreement, and shall be without force or effect unless the Commissioner affixes his signature hereto on or before February 29, 1940. IN WITNESS WHEREOF, the above parties have subscribed their respective signatures to this agreement, in duplicate, on the date indicated. Later the instrument was signed by both the petitioner and the respondent, the latter signing on February 29, 1940. The exact amount of the refund allowed in the above settlement for amounts paid as processing taxes in 1934 and 1935 was not computed at the conference on December 18, 1939, but petitioner's representatives were advised that the amount of the refund would be slightly in excess of $600,000. *159 They were also advised that such refund of processing taxes would necessitate a separate adjustment of the processing tax deductions allwable to petitioner in determining its income taxes for 1934 and 1935, and further, that such adjustment of the said deductions would result in additional income taxes for those years of approximately $100,000. One of petitioner's representatives expressed a desire to include a settlement of the income tax liability in the settlement then being negotiated, but because all of the data for settlement of the income tax liability were not at hand, no agreement in settlement thereof was attempted or reached. The petitioner did not thereafter receive any letter, memorandum, or other writing showing the exact amount of the processing tax refund allowed until it received the notice of determination of the deficiencies herein with explanatory statements attached. The agreed amount of $250,000 shown in the closing agreement was assessed as an additional tax on unjust enrichment for the fiscal year ended October 31, 1935. In payment of the said assessment the petitioner issued its check, dated March 18, 1940, for $250,000, bearing the following statement typed *160 on the back thereof: Full payment of total liability of the taxpayer for tax, penalty, and interest, for the taxable years ended prior to November 1, 1936, under the terms of closing agreement under Section 506, Revenue Act of 1936 (Titles III and VII - Revenue Act of 1936) signed by The Rath Packing Company and the Commissioner of Internal Revenue under date of February 29, 1940, at the agreed amount of Two Hundred Fifty Thousand Dollars ($250,000.00). Thereafter and in March 1940, a revenue agent called at the petitioner's office in connection with the determination of petitioner's income tax liability (Title I liability) for the fiscal years in controversy, and in the course of his visit discussed the effect on income tax liability of the refund of processing taxes allowed in the above settlement. On or about May 13, 1940, petitioner's president and its counsel had another conference in Washington, at which they protested any increase in petitioner's income tax liability for the years in controversy, contending that when on December 18, 1939, the petitioner agreed to pay an additional amount of $250,000, it was with the understanding that said amount should be in settlement in *161 full of its tax liability to the Government for said years. The response by respondent's representatives was that the $250,000 was paid in settlement of the processing tax refund claim and petitioner's liability for unjust enrichment tax and did not represent any settlement of income tax liability; and that if the petitioner thought the settlement was unfair or not in accordance with the understanding of the parties, the closing agreement would be set aside and the parties could reconsider the matter from the beginning. The representatives of petitioner declined to have the closing agreement so set aside. After other conferences subsequently held in the office of the Internal Revenue Agent in Charge, in Omaha, Nebraska, the respondent on May 3, 1941, notified the petitioner of his determination of the income tax and excess profits tax deficiencies here in controversy. In explanation, he stated that in making such determination $470,037.15 and $164,962.85 of the deductions taken for processing taxes for the fiscal years ended October 31, 1934, and October 31, 1935, respectively, had been disallowed, for the reason that in connection with the settlement of the petitioner's tax liability *162 under Title III of the Revenue Act of 1936 the petitioner's claim for the refund of processing tax was allowed in said amounts for such years, respectively. Aside from the statement contained in the deficiency notice, the petitioner has never received any formal notice from the respondent stating what amount of its refund claim was allowed for the respective years, or how such amount was computed. Opinion The principal contention of the petitioner seems to be that there is no basis in fact or in law for concluding that the agreement of settlement involved herein was grounded upon the refund or credit of any amount paid as processing taxes in 1934 and 1935. As to the law, the argument in effect is that where the claim of the taxpayer for a refund of amounts previously paid as processing taxes and the claim of the Government for unjust enrichment tax are settled under section 506 of the Revenue Act of 1936, [1] the two items involved lose their identities and the result is a deficiency or a refund in the agreed number of dollars but of indeterminate character. There is some argument that, by giving effect to the processing tax refund or credit allowed, the respondent in his determination *163 of Title I deficiencies herein is reopening the prior agreement in direct violation of section 506, under which it was reached. *164 The determination of the respondent is in our opinion supported by both the law and the facts. Since one incidence of the unjust enrichment tax is the refunding or crediting of amounts previously paid as processing taxes, it was both reasonable and logical that Congress should permit the claim of the Government therefor to be considered and settled in conjunction with the taxpayer's claim for refund of processing taxes paid, and in section 506, supra, provision is made for the joint consideration and settlement of such claims. That section is administrative, not substantive, and not only does it effect no change in the character or substance of the liabilities back of such claims, but, to the contrary, it is dependent for its applicability upon the existence of claims of separate and offsetting liabilities. It does not follow, of course, that there is always substance to the claims of both the Government and the taxpayer, but whether there was and whether the settlement effected was a net settlement is a question answered by the facts of settlement in each particular case. Our conclusions as to the facts of settlement are set out in our findings of fact, and no good purpose *165 would be served by restatement or extended discussion here. Suffice it to say that a refund or credit of amounts previously paid by the petitioner as processing taxes was allowed and the $250,000 paid by it under the settlement represented the net of its unjust enrichment tax due over and above the refund or credit allowed, and while the amount of the refund or credit allowed is not stated in the formal agreement signed by the parties, the writing does show by its terms that effect was given to such refund or credit in arriving at the $250,000 to be paid by the petitioner. The liability here in question is an income tax liability arising under Title I of the statute, while the liabilities disposed of or settled by the section 506 agreement were the liability of the petitioner under Title III and that of the Government under Title VII. The Title I liability of the petitioner was not settled by the said agreement and it was not intended by the parties that it should be. Compare . It is accordingly apparent that the respondent in his determination here has not attempted to reopen or go behind the settlement above, as *166 the petitioner argues, but only to give effect, under and pursuant to the provisions of Title I, to the settlement actually made. The only remaining question, namely, whether in determining income tax liability the processing tax refund must be taken into account in the taxable years, being the years in which the said processing taxes were paid and deducted, or in the year of the allowance of the refund or credit, is controlled and decided by our holding in , and is determined against the petitioner. , decided by a divided court in the United States Circuit Court of Appeals for the Tenth Circuit, apparently extends to section 506, supra, the force here contended for by the petitioner. Inasmuch, however, as the opinion of the court does not indicate that consideration was given to the matters discussed above and on which our conclusions here rest, and because of our belief in the soundness of the views we have expresed, we respectfully decline to construe section 506, supra, as that court has done. Decision will be entered *167 for the respondent. Footnotes
1. SEC. 506. CLOSING AGREEMENTS. Any person who is liable for the tax imposed by this title and who has filed any claim or claims for refund of any amount paid or collected as tax under the Agricultural Adjustment Act. as amended, may apply to the Commissioner of Internal Revenue for an adjustment of such liability for tax in conjunction with such claim or claims for refund, and thereafter, the Commissioner, for such purposes, may, in his decretion, consider such liability and such claim or claims as one case and, in his discretion, may enter into a written agreement with such person for the settlement of such case by such payment by, or refund to, such person as may be specified in such agreement. Such agreement shall be a final settlement of the liability for tax and the claim or claims for refund covered by such agreement, except in case of fraud, malfeasance, or misrepresentation of a material fact. In the absence of fraud or mistake in mathematical calculation, any action taken or any consideration given by the Commissioner pursuant to this section shall not be subject to review by any court, or any administrative, or accounting officer, employee, or agent of the United States.↩